UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------

RONALD J. PRYOR,

                        Plaintiff,                  **MEMORANDUM & ORDER**
                                                                     14-CV-5596 (MKB)

            v.

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.

-----------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

      Plaintiff Ronald J. Pryor, proceeding *pro se*, filed the above-captioned action pursuant to 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security (the "Commissioner"). Plaintiff challenges the Commissioner's determination that he earned income in the amount of $15,922.54 in 2008, while he was collecting disability insurance benefits. The Commissioner moves for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, claiming that the decision of Administrative Law Judge John Barry (the "ALJ") is supported by substantial evidence and should be affirmed. (Comm'r Notice of Mot. for J. on the Pleadings ("Comm'r Mot."), Docket Entry No. 21; Comm'r Mem. of Law in Supp. of Comm'r Mot. ("Comm'r Mem."), Docket Entry No. 22; Comm'r Reply Mem. of Law in Supp. of Comm'r Mot. ("Comm'r Reply"), Docket Entry No. 23.) Plaintiff opposes the motion. (Pl. Affirmation in Opp'n to Comm'r Mot. ("Pl. Opp'n"), Docket Entry No. 18.) For the reasons set forth below, the Court grants the Commissioner's motion for judgment on the pleadings.

**I. Background**

      Plaintiff began receiving disability insurance benefits in 1996, after he sustained a brain

injury in a bus accident. (R. 20, Docket Entry No. 12; Compl. ¶ 4, Docket Entry No. 1.) The Social Security Administration (the "SSA") revised Plaintiff's 2008 earnings record[1] to include $15,922.54 in unreported earnings (the "Unreported Earnings"), which Plaintiff had allegedly earned at Parking Systems Plus, Inc. ("Parking Systems"). (R. 20.) On December 6, 2010, the SSA notified Plaintiff of the updated earnings information. (R. 23.) On March 29, 2012, Plaintiff challenged the inclusion of the Unreported Earnings in his earnings record. (R. 20, 25.) Plaintiff's challenge was unsuccessful, and on June 27, 2012, Plaintiff filed a request for a hearing before an administrative law judge. (R. 20, 29.) On May 31, 2013, the ALJ concluded that the Unreported Earnings were appropriately included in Plaintiff's earnings record. (R. 17.) Plaintiff appealed the ALJ's decision, (R. 64), and on August 26, 2014, the Appeals Council denied review of Plaintiff's appeal. (R. 2.)

### a. Plaintiff's testimony before the ALJ

On May 14, 2013, Plaintiff testified before the ALJ. (R. 7.) According to Plaintiff, he never worked for Parking Systems and his earnings record, which included the Unreported Earnings, was therefore incorrect.[2] (R. 8–9.) Plaintiff testified that he lost his wallet in the 1970s, and he believes that his identity was stolen and his social security number was used by

---

[1] "[The SSA] keeps a record of the earnings of all persons who work in employment or self-employment covered under social security. [It] use[s] these earnings records to determine entitlement to and the amount of benefits that may be payable based on a person's earnings under the . . . disability . . . insurance program." 20 C.F.R. § 404.801; *see also* 42 U.S.C. § 405 ("[T]he Commissioner of Social Security shall establish and maintain records of the amounts of wages paid to, and the amounts of self-employment income derived by, each individual and of the periods in which such wages were paid and such income was derived . . . .").

[2] Plaintiff acknowledged that he was aware that he needed to notify the SSA if he was working while collecting disability benefits. (R. 13.)

2

someone else, which resulted in the Unreported Earnings.[3] (R. 12.) Plaintiff also testified that the address and cellular phone number reported by the Parking Systems employee were Plaintiff's then-current address and cellular phone number. (R. 9, 14).

Plaintiff first began receiving notices of overpayment of disability insurance benefits from the SSA in approximately November of 2008, and he was first notified of the Unreported Earnings in approximately March of 2012.[4] (R. 9.) The SSA told Plaintiff that he needed to contact the Internal Revenue Service ("IRS") in order to contest his earnings record. (R. 9.) On March 27, 2012, Plaintiff filed an Identity Theft Affidavit with the IRS (the "March 2012 Identity Theft Affidavit"). (R. 10–12.) In the March 2012 Identity Theft Affidavit, Plaintiff told the IRS that he had been the victim of identity theft, which had affected his tax records. (R. 63.) He reported that he lost his wallet containing his identification and social security card "[a]t some point in the 1970's." (R. 63.) Plaintiff also told the IRS that he had not worked "[d]uring the tax years 2008 through 2011" and had only collected disability insurance benefits, and therefore, wages earned from Parking Systems were erroneously attributed to his name and social security number. (R. 63.) On May 1, 2013, after reviewing the information submitted by Plaintiff, the IRS informed Plaintiff that "no action was necessary" on Plaintiff's account. (R. 61.) Plaintiff understood this response to mean that the IRS agreed with Plaintiff that his tax records were erroneous. (R. 11.) The ALJ understood the IRS' refusal to take any action after receiving the March 2012 Identity Theft Affidavit to mean that the IRS was satisfied that Plaintiff's earnings record was accurate. (R. 11–12.)

---

[3] Plaintiff testified that he reported the lost wallet at the time and received a new social security card. (R. 13.) Plaintiff does not specify to whom he reported the loss. (*See* R. 13.)

[4] Plaintiff testified that he never contacted Parking Systems to report that his identity was being used by one of its employees because he did not know Parking Systems' address. (R. 15.)

3

### b. Other evidence before the ALJ

In addition to Plaintiff's testimony, the ALJ also considered SSA records and information from Parking Systems.

#### i. SSA earnings records

Plaintiff's earnings record indicates that an individual using Plaintiff's name and social security number worked for Parking Systems from 2008 to 2012. (R. 38.) This person earned $15,922.54 in 2008, $14,645.83 in 2009, $15,145.13 in 2010, $16,458.95 in 2011 and $10,935.38 in 2012.[5] (*Id.*) This person also earned $112.50 from Bridge Tower Parking LLC in 2012. (*Id.*)

#### ii. Information from Parking Systems

In an attempt to determine how to credit the earnings from Parking Systems, the SSA contacted Parking Systems to obtain information about the employee working under Plaintiff's name and using Plaintiff's social security number. (R. 26–28.) On April 3, 2011, the SSA requested that Parking Systems complete a verification form to help the SSA "determine how to credit the wages." (R. 26.) On April 6, 2011, Parking Systems' payroll manager completed the verification form, confirming that Parking Systems employed an individual named Ronald Pryor who used Plaintiff's social security number. (R. 27.) Parking Systems gave the SSA the employee's date of birth, race, telephone number, address, the dates he worked and a copy of his social security card. (R. 27–28.)

### c. The ALJ's decision

The ALJ determined that Plaintiff earned the Unreported Earnings from Parking Systems.

---

[5] Although Plaintiff's earnings record includes earnings for years other than 2008, only the 2008 earnings are disputed in this action.

(R. 22.) In reaching his conclusion, the ALJ considered the evidence that, in addition to using Plaintiff's name and social security number, the Parking Systems' employee also used Plaintiff's then-current address and cellular phone number. (*Id.*) The ALJ found that Plaintiff provided no explanation as to how an individual who stole his identity in the 1970s would have known Plaintiff's current address and cellular phone number when "cell[ular] phones had not yet been invented" in the 1970s. (*Id.*) The ALJ also considered the fact that Plaintiff had not "filed any police reports" and concluded that this was something that a reasonable person believing they were the victim of identity theft would have done. (*Id.*) The ALJ therefore concluded that Plaintiff earned the Unreported Earnings.[6] (*Id.*)

### d. The Appeals Council decision

Plaintiff timely appealed the ALJ's decision to the Appeals Council. (R. 2.) Plaintiff submitted new evidence to the Appeal Council, (R. 5), including an IRS Identity Theft Affidavit dated June 4, 2013 (the "June 2013 Identity Theft Affidavit"), (R. 65), and a police incident report dated June 5, 2013 (the "Incident Report") from the New York City Police Department (the "NYPD"), (R. 66). The June 2013 Identity Theft Affidavit is substantially similar to the March 2012 Identity Theft Affidavit.[7] (*Compare* R. 65, *with* R. 63.) The Incident Report stated that Plaintiff had lost unspecified property between June of 1970 and January of 2012. (R. 66.) Plaintiff also submitted to the Appeals Council a two-page facsimile cover letter that Plaintiff previously sent to the SSA Office of Disability Adjudication, attaching several documents. (R. 67–77.) The facsimile cover letter stated that Plaintiff had been arrested by NYPD officers

---

[6] The ALJ noted that the SSA field office would have to determine whether an overpayment or fraud had occurred.

[7] The record does not contain any response to the June 2013 Identity Theft Affidavit from the IRS.

because they were informed by the SSA that Plaintiff was collecting disability insurance benefits while working at Parking Systems. (R. 67–68.) The documents Plaintiff attached to the facsimile cover letter included a criminal complaint filed in the Criminal Court of the City of New York, Queens County, and a January 9, 2014 affidavit from NYPD Detective James Monaco in support of the criminal complaint. (R. 5, 66–77.) The criminal complaint specified charges against Plaintiff for (1) grand larceny in the second degree, (2) falsifying business records in the first degree, and (3) offering a false instrument for filing in the first degree. (R. 69.) The January 9, 2014 affidavit specified that Monaco was informed by Special Agent Neisha Samaroo of the SSA Office of the Inspector General that, on August 4, 2012, Samaroo personally observed Plaintiff operating a toll booth at Parking Systems. (R. 71.) On August 26, 2014, the Appeals Council denied review of Plaintiff's appeal. (R. 2).

    e.  **Evidence submitted to the Court**

Plaintiff timely commenced this action on September 23, 2014, challenging the Commissioner's determination that his earnings record accurately included the Unreported Earnings. (Compl. ¶ 1.) Plaintiff has submitted two pieces of evidence that were not provided to the ALJ or the Appeals Council: a Certificate of Disposition as to his criminal prosecution dated December 18, 2014, (Cert. of Disposition, annexed to Pl. Opp'n as Ex. A), and an SSA notice of favorable decision dated June 6, 2008 (the "June 2008 Decision"), in which Administrative Law Judge Marilyn P. Hoppenfeld concluded that Plaintiff was disabled, (June 2008 Decision, annexed to Pl. Opp'n as Ex. B).[8]

---

    [8] Plaintiff contends that ALJ Hoppenfeld made the following relevant findings in the June 2008 Decision:
> Claimant testified that he never worked as a security guard in 2004 and 2005; his ID was lost and in fact he was denied a job as a security

## II. Discussion

### a. Standard of review

"In reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004), *as amended on reh'g in part*, 416 F.3d 101 (2d Cir. 2005); *see also Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (per curiam). "Substantial evidence is 'more than a mere scintilla' and 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Lesterhuis v. Colvin*, 805 F.3d 83, 87 (2d Cir. 2015) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) (same). Once an ALJ finds facts, the court "can reject those facts only if a reasonable factfinder would *have to conclude otherwise*." *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 448 (2d Cir. 2012) (citations and internal quotation marks omitted). In deciding whether substantial evidence exists, the court "defer[s] to the Commissioner's resolution of conflicting evidence." *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012); *McIntyre*, 758 F.3d at 149 ("If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld."). The Commissioner's factual findings "must be given conclusive effect so long as they are supported by substantial evidence." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citation and internal quotations omitted). If, however, the Commissioner's decision is not supported by substantial evidence or

---

guard when he applied. The earnings recorded for the year 2003 in the detailed report was removed and no earnings were recorded for 2003, in the earnings record summary, which added some substance to his claim of stolen ID. Disregarding the earnings posted in 2004 and 2005, the record shows he has not worked for the past 12 years.

(June 2008 Decision 5.)

is based on legal error, a court may set aside the decision of the Commissioner. *Box v. Colvin*, 3 F. Supp. 3d 27, 41 (E.D.N.Y. 2014); *see Balsamo v. Chater*, 142 F.3d 75, 79 (2d Cir. 1998). "In making such determinations, courts should be mindful that '[t]he Social Security Act is a remedial statute which must be 'liberally applied'; its intent is inclusion rather than exclusion.'" *McCall v. Astrue*, No. 05-CV-2042, 2008 WL 5378121, at *8 (S.D.N.Y. Dec. 23, 2008) (alteration in original) (quoting *Rivera v. Schweiker*, 717 F.2d 719, 723 (2d Cir. 1983)).

### b. The ALJ's decision is supported by substantial evidence

The Commissioner moves for judgment on the pleadings arguing that the ALJ's decision, that Plaintiff's earnings record correctly included the Unreported Earnings, is supported by substantial evidence and should be affirmed. (Comm'r Mem. 7.) The Commissioner also argues that its decision that Plaintiff's testimony was not credible is supported by the record, including the evidence Plaintiff submitted to the Appeals Council. (*Id.* at 7–9.) Plaintiff argues that his testimony, the March 2012 Identity Theft Affidavit, the June 2013 Identity Theft Affidavit and the SSA's letter to Parking Systems all support his claim of identity theft, and that the Unreported Earnings were therefore incorrectly attributed to him and incorrectly included in his earnings record. (Pl. Opp'n ¶¶ 9–11.)

"The Commissioner of Social Security must maintain records of the wages and self-employment income earned by each individual assigned a social security number." *Acierno v. Barnhart*, 475 F.3d 77, 79 (2d Cir. 2007) (citing 42 U.S.C. § 405(c)(2)(A)). If the Commissioner's records are incorrect, they may be corrected "within three years, three months, and 15 days following the end of the calendar year to which the errors relate." *Id.* (citing 42 U.S.C. § 405(c)(1)(B), (c)(4)). An individual may request a revision to his or her earnings record or the SSA may correct the record on its own. 20 C.F.R. § 404.821; *see also Alexander v.*

*Comm'r of Soc. Sec.*, 435 F. App'x 813, 816 (11th Cir. 2011) ("Before the time limit ends for any year, [the Commissioner] will correct the record of [an individual's] earnings for that year for any reason if satisfactory evidence shows SSA records are incorrect. [The Commissioner] may correct the record as the result of a request filed under § 404.820 or [the Commissioner] may correct it on [her] own." (first and second alterations in original) (quoting 20 C.F.R. § 404.821)). Beyond the allotted time period for corrections, the records conclusively establish an individual's earnings and can only be corrected if: (1) one of the exceptions enumerated at 20 C.F.R. § 404.822(b)–(e) applies and (2) the evidence demonstrates that the records are inaccurate. *See* 20 C.F.R. § 404.822(a); *see also McCall v. Astrue*, No. 05-CV-2042, 2008 WL 5378121, at *8 (S.D.N.Y. Dec. 23, 2008) ("Once that time has elapsed, however, the records become conclusive evidence . . . , unless one of the exceptions for correcting earnings records applies and there is sufficient evidence to demonstrate the records' inaccuracy." (first citing 42 U.S.C. § 405(c)(1)(B), (c)(4)–(5); and then citing 20 C.F.R. §§ 404.803(c), 404.822)). The exceptions to the time limit for correcting an earnings record include, among other things, "[c]orrecting SSA records to agree with tax returns," "[f]raud," and "[e]ntries for wrong person or period." 20 C.F.R. § 404.822(b), (e). If a claimant's earnings record is revised, the revision can be administratively or judicially reviewed. 20 C.F.R. § 404.902(n).

Where a claimant challenges an SSA determination, "[a]n ALJ 'is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of other evidence in the record.'" *Burnette v. Colvin*, 564 F. App'x 605, 609 (2d Cir. 2014) (quoting *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (per curiam)). Such a credibility assessment must be supported by substantial evidence. *Reynolds v. Colvin*, 570 F. App'x 45, 49 (2d Cir. 2014) ("Because it is the function of the

agency, not reviewing courts, 'to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant,' we will defer to its determinations as long as they are supported by substantial evidence." (quoting *Aponte v. Sec'y, Dep't of Health & Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984)). However, "where an ALJ rejects witness testimony as not credible, the basis for the finding 'must . . . be set forth with sufficient specificity to permit intelligible plenary review of the record.'" *Evans v. Astrue*, 783 F. Supp. 2d 698, 710–11 (S.D.N.Y. 2011) (alteration in original) (quoting *Williams on Behalf of Williams v. Bowen*, 859 F.2d 255, 260–61 (2d Cir. 1988)).

If a recipient of disability insurance benefits returns to work or has an increase in earnings or in the amount of time worked, the recipient has a responsibility to inform the SSA. 20 C.F.R. § 404.1588(a)(2)–(4); *see also Johnson v. Colvin*, No. 13-CV-689, 2014 WL 4384224, at *3 (N.D.N.Y. Sept. 3, 2014) ("A person who receives disability insurance benefits has a responsibility to report to SSA relevant changes pertaining to any return to work or earnings or increases." (citing 20 C.F.R. § 404.1588(a))).

The ALJ's decision that Plaintiff was the person employed by Parking System in 2008 and that Plaintiff's earnings record correctly included the Unreported Earnings is supported by substantial evidence. The information from Parking Systems confirmed that the employee was using Plaintiff's name, social security number and Plaintiff's then-current address and cellular phone number. Plaintiff testified that he believed the Unreported Earnings were the result of identity theft due to the loss of his wallet in the 1970s. However, in assessing Plaintiff's credibility, the ALJ noted that Plaintiff's cellular phone number would not have been available to the person who stole Plaintiff's wallet with his identification document and social security card in the 1970's because that was "decades" before cellular phones were available. (R. 22.) The

10

ALJ's decision is also supported by the IRS' decision not to take any action to correct Plaintiff's income despite Plaintiff's submission of the March 2012 Identity Theft Affidavit to the IRS challenging his tax records and claiming that his identity had been stolen. As evidence that even the SSA believed that he was not the person who was working at Parking Systems, Plaintiff points to the letter from the SSA to Parking Systems, which requested information about the employee using Plaintiff's information and stated that the SSA believed the earnings may have been incorrectly attributed to Plaintiff. The letter further explained that the SSA was trying to determine whether two or more people were using Plaintiff's social security number. However, the fact that the SSA may have questioned whether someone was using Plaintiff's information prior to receiving information from Parking Systems does not undermine the SSA's conclusion that Plaintiff was the person working at Parking Systems in 2008.

The evidence Plaintiff submitted to the Appeals Council, which was not before the ALJ but is a part of the record and properly considered by the Court,[9] also supports, rather than undermines, the ALJ's determination. After submitting the March 2012 Identity Theft Affidavit to the IRS and failing to convince the IRS that his tax records erroneously included the Unreported Earnings, Plaintiff submitted the June 2013 Identity Theft Affidavit to the IRS,

---

[9] Because the Appeals Council denied review of the ALJ's decision, the Court must determine whether the ALJ's decision is supported by the entire record, including the evidence submitted for the first time to the Appeals Council. *See Lesterhuis v. Colvin*, 805 F.3d 83, 87 (2d Cir. 2015) ("[N]ew evidence submitted to the Appeals Council following the ALJ's decision becomes part of the administrative record for judicial review when the Appeals Council denies review of the ALJ's decision." (alteration in original) (quoting *Perez v. Chater*, 77 F.3d 41, 45 (2d Cir. 1996))); *Ryder v. Colvin*, No. 15-CV-241, 2015 WL 9077628, at *4 (W.D.N.Y. Dec. 16, 2015) ("The new evidence became a part of the administrative record when the Appeals Council denied review. Where this occurs, 'the ALJ's decision, and not the Appeals Council's, is the final agency decision.' This Court must thus determine whether substantial evidence supports the ALJ's decision, when the new evidence is included in the administrative record." (first citing *Perez*, 77 F.3d at 45; and then quoting *Lesterhuis*, 805 F.3d at 87)).

reiterating the claims he made in the March 2012 Identity Theft Affidavit. However, Plaintiff has not presented any evidence that the IRS made adjustments to Plaintiff's 2008 income after receiving the June 2013 Identity Theft Affidavit. Furthermore, although Plaintiff claims that his identity documents were lost in the 1970's, Plaintiff never filed a report with the police until he filed the Incident Report on June 5, 2013, subsequent to the hearing before the ALJ, even though he admits that he knew of the discrepancies as to his earnings since 2008, when he received notices of overpayment from the SSA, and that he learned of the Unreported Earnings in March of 2012. In addition, based on the evidence submitted to the Appeals Council, Plaintiff appears to have been arrested and charged with grand larceny, falsifying business records, and offering a false instrument for filing based, in part, on the observation of an SSA agent who saw Plaintiff working at Parking Systems.[10]

Accordingly, the ALJ's determination that the Unreported Earnings were earned by Plaintiff and therefore appropriately included in Plaintiff's earnings record was supported by substantial evidence.

### c. The new evidence submitted to the Court does not warrant a remand

Plaintiff has submitted the June 2008 Decision from the SSA and a Certificate of Disposition of the criminal proceeding against him, neither of which were submitted to the ALJ or the Appeals Council. The June 2008 Decision from the SSA noted that, at an administrative hearing in 2008, Plaintiff testified that his wallet had been stolen. (June 2008 Decision 5.) The Certificate of Disposition indicates that two of the three criminal charges against Plaintiff were

---

[10] In his affirmation opposing the Commissioner's motion, Plaintiff does not dispute that he was observed at Parking Systems but argues that he was not "working" when the agent observed him at Parking Systems but instead was only "watching" the parking lot for a few minutes as a favor to a friend who took a lunch break. (Pl. Opp'n ¶ 15.) Plaintiff never presented this argument to the ALJ or the Appeals Council.

dismissed and that the third charge was adjourned in contemplation of dismissal. (Cert. of Disposition 1–2.) Plaintiff argues that the 2008 Decision demonstrates that the SSA was aware that Plaintiff was the victim of identity theft. (Pl. Opp'n ¶¶ 7–8.) Plaintiff also argues that the disposition of the criminal proceeding supports his claim that he did not work for Parking Systems. (*Id.* ¶¶ 4–5.)

The Commissioner argues that the 2008 Decision does not support Plaintiff's claims because, while the 2008 Decision noted Plaintiff's testimony regarding his stolen identity, the 2008 Decision did not make any findings about Plaintiff's identity theft allegations and, in any event, the decision was issued before the SSA's investigation into the Unreported Earnings and before the SSA obtained the information from Parking Systems. (Comm'r Reply 2–3.) The Commissioner also argues that the dismissal of Plaintiff's criminal charges is not relevant to the Court's determination of whether the ALJ's determination is supported by substantial evidence because the ALJ only determined that the Unreported Earnings were correctly attributed to Plaintiff, but did not make any determination as to whether Plaintiff committed fraud. (*Id.* at 1–2.)

"A court reviewing the Commissioner's determination must generally base its decision 'upon the pleadings and transcript of the record.'" *Lopez v. Astrue*, No. 09-CV-1678, 2011 WL 6000550, at *10 (E.D.N.Y. Nov. 28, 2011) (first quoting 42 U.S.C. § 405(g); and then citing *Mathews v. Weber*, 423 U.S. 261, 263 (1976)). However, pursuant to the sixth sentence of 42 U.S.C. § 405(g), the court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g); *see also Pollard v. Halter*, 377 F.3d 183, 193

13

(2d Cir. 2004). Thus, remand of this type requires (1) "a showing that there is new evidence which is material" and (2) "good cause for the failure to incorporate such evidence into the record in a prior proceeding." *Rolon v. Comm'r of Soc. Sec.*, 994 F. Supp. 2d 496, 509 (S.D.N.Y. 2014) (citing 42 U.S.C. § 405(g)). Evidence is "new" if it has not been considered previously and is "not merely cumulative of what is already in the record." *Flanigan v. Colvin*, 21 F. Supp. 3d 285, 308 (S.D.N.Y. 2014) (quoting *Jones v. Sullivan*, 949 F.2d 57, 60 (2d Cir. 1991)). "New evidence is considered material if (1) it is 'relevant to the claimant's condition during the time period for which benefits were denied,' (2) it is 'probative,' and (3) there is 'a reasonable possibility that the new evidence would have influenced the [Commissioner] to decide claimant's application differently.'" *Williams v. Comm'r of Soc. Sec.*, 236 F. App'x 641, 644 (2d Cir. 2007) (alteration in original) (quoting *Pollard v. Halter*, 377 F.3d 183, 193 (2d Cir. 2004)). Good cause exists where the new evidence "surfaces after the Secretary's final decision and the claimant could not have obtained the evidence during the pendency of [the prior] proceeding." *Carter v. Colvin*, No. 14-CV-4970, 2015 WL 5124326, at *10 (E.D.N.Y. Sept. 1, 2015) (quoting *Lisa v. Sec'y of Dep't of Health & Human Servs.*, 940 F.2d 40, 44 (2d Cir. 1991)).

Here, the new evidence Plaintiff has presented to the Court is not material; it is not relevant or probative as to Plaintiff's earnings in 2008 and there is no reasonable probability that the new evidence would have influenced the ALJ's decision. As noted by the Commissioner, the 2008 Decision did not make a factual finding that Plaintiff's identity had been stolen. (Comm'r Reply 2.) Rather it noted that Plaintiff's claim of identity theft was supported by the fact that the earnings posted to his account in 2003 had been removed. (June 2008 Decision 5.) Moreover, the 2008 Decision did not address Plaintiff's 2008 earnings, which are at issue in this case.

14

Furthermore, the dismissal of the criminal charges, which were based on fraud or intentional wrongdoing, does not undermine the ALJ's decision as the ALJ did not find that Plaintiff received benefits that he was not entitled to or that he committed fraud, only that he earned the Unreported Earnings. Thus, the new evidence that Plaintiff has submitted to the Court is not relevant or probative and does not contradict or undermine the ALJ's decision. Accordingly, the Court has no basis to remand the ALJ's decision. *See Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996) (holding that "the ALJ's determination [wa]s supported by substantial evidence," in part, because the new evidence submitted by the plaintiff did "not contradict the ALJ's finding").

The Court therefore grants the Commissioner's motion for judgment on the pleadings as to Plaintiff's social security appeal.

### d. Plaintiff's monetary claim is barred by sovereign immunity

Plaintiff appears to be seeking four and a half million dollars in monetary damages as a result of the criminal charges that he alleges were either dismissed or adjourned pending dismissal. (Pl. Letter dated January 20, 2015 at 4 ("For the criminal charges and being arrested I am suing 4.5 million dollars."), Docket Entry No. 10.) The Commissioner argues that Plaintiff's claim is barred by sovereign immunity because the Social Security Act does not provide for monetary damages. (Comm'r Mem. 10.)

The United States is generally immune from suit. *United States v. Bormes*, 568 U.S. ---, ---, 133 S. Ct. 12, 16 (2012) ("Sovereign immunity shields the United States from suit absent a consent to be sued that is 'unequivocally expressed.'" (quoting *United States v. Nordic Vill., Inc.*, 503 U.S. 30, 33–34 (1992))); *see also Binder & Binder, P.C. v. Colvin*, --- F.3d ---, ---, 2016 WL 1085764, at *3 (2d Cir. Mar. 21, 2016) ("'Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit.' Moreover, 'waivers of sovereign

15

immunity must be "unequivocally expressed" in statutory text, and cannot simply be implied.'" (first quoting *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994); and then quoting *Adeleke v. United States*, 355 F.3d 144, 150 (2d Cir. 2004). "[T]he United States has not waived its sovereign immunity for claims by a Social Security claimant seeking monetary relief in addition to benefits awards." *Donnelly v. Barnhart*, 80 F. App'x 701, 702 (2d Cir. 2003) (first citing *United States v. Sherwood*, 312 U.S. 584, 586 (1941); and then citing *Liffiton v. Keuker*, 850 F.2d 73, 77 (2d Cir. 1988)); *Purisima v. Astrue*, No. 12-CV-3528, 2012 WL 5519295, at *3 (S.D.N.Y. Nov. 14, 2012) ("Though the Social Security Act, 42 U.S.C. § 405(g), provides for judicial review of SSA's final decisions made after a hearing, and confers subject matter jurisdiction to that extent, it is well-established that the Act 'does not bestow a private right of action for monetary relief.'" (quoting *Katsoulakis v. Astrue*, No. 10-CV-81, 2011 WL 3877080, at *5 (E.D.N.Y. Aug. 31, 2011)). Moreover, "the Supreme Court has found that no action for damages can be maintained against personnel of the SSA because Congress provided an elaborate statutory scheme in the Act with 'meaningful safeguards or remedies for the rights of persons' wrongfully denied under the Act." *Ortega v. Colvin*, No. 13-CV-3487, 2015 WL 6143591, at *4 (E.D.N.Y. Oct. 19, 2015) (quoting *Schweiker v. Chilicky*, 487 U.S. 412, 425 (1988)). Thus, to the extent Plaintiff is seeking monetary damages for violations of the Social Security Act, his claim is barred by sovereign immunity.

### III. Conclusion

For the foregoing reasons, the Court grants the Commissioner's motion for judgment on the pleadings.

SO ORDERED:

    s/ MKB
MARGO K. BRODIE
United States District Judge

Dated: March 22, 2016
       Brooklyn, New York